# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
SEP 0 5 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br><br>ERIC HANCOCK<br><br>Defendant(s) | Case No.  2:18-MJ-0171 KJN |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 12, 2018__ in the county of __Shasta__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 21 U.S.C. § 841(a)(1) | Possession With Intent to Distribute Methamphetamine and Heroin |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_/s/ signature_
Complainant's signature

Mark C. Giacomantonio, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: Sept 4 2018

_/s/ signature_
Judge's signature

City and state: Sacramento, CA.

Kendall J. Newman, U.S. Magistrate Judge
Printed name and title

### Affidavit in Support of Complaint and Arrest Warrant

### I. Background and Experience

1. I, Mark C. Giacomantonio, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), having been duly sworn, hereby depose and say:

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a law enforcement officer engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives. I have been an ATF Special Agent since March 2017. Prior to working for ATF, I was employed as a Special Agent with the United States Environmental Protection Agency-Criminal Investigation Division (EPA-CID) for over five years. I have received training in federal firearms laws and regulations at the ATF National Academy, and additional federal law enforcement training at the Federal Law Enforcement Training Center Criminal Investigator Training Program. I have previously received training in federal environmental criminal laws and regulations and investigated federal environmental criminal violations and other white-collar criminal investigations while with EPA-CID. I have investigated cases involving federal firearms violations, involving unlawful sales, possession, manufacturing, and transportation of firearms. I have participated in a variety of different investigative aspects while conducting investigations with ATF and EPA-CID, including surveillance, undercover operations to conduct controlled purchases of firearms, interviewing suspects, and the execution of search and arrest warrants. I have been the affiant on affidavits for search warrants relating to state and federal offenses.

4. The facts in this Affidavit come from my personal observations, my training and experience, my consultation with experienced law enforcement officers, and information obtained from other agents and witnesses. This Affidavit is intended to show that there is

1

sufficient probable cause for the requested Criminal Complaint and Arrest Warrant and does not set forth all of my knowledge about this matter.

## II.    Requested Warrant

5.   This affidavit is submitted in support of a request that a Criminal Complaint and an Arrest Warrant issue for Eric HANCOCK, for violations of 18 U.S.C. § 922(g)(1) [Felon in Possession of a Firearm], and 21 U.S.C. § 841(a)(1) [Possession with intent to distribute methamphetamine and heroin].

## III.   Statement of Probable Cause

6.   On or about April 12, 2018, Redding Police Officer David Chapman was patrolling near the Vagabond Inn, 2731 Bachelli Lane, Redding, California, in a fully marked Redding Police Department patrol car. Officer Chapman's experience as a patrol officer in this area informed him that individuals associated with narcotics are often located at this particular Vagabond Inn.

7.   Officer Chapman conducted records checks on the license plates of several of the vehicles in the parking lot. A records check of one vehicle, a BMW with California license plates, indicated that the vehicle's registration had expired on August 16, 2017, and that the Department of Motor Vehicles had suspended the car's registration as of March 22, 2018.

8.   Officer Chapman left the motel parking lot, and came back later that same day. He subsequently observed the BMW leaving the parking lot, driving north on Bechelli Lane, and executed a traffic stop on the vehicle, using his patrol car's traffic enforcement lights and siren, believing the driver of the BMW to be in violation of California Vehicle Code § 4000(a), for having an expired registration.

9.   Officer Chapman got out of his patrol car and spoke with the driver, later identified as Eric Daniel HANCOCK, who was the BMW's sole occupant. When Officer Chapman explained why he had made the traffic stop, HANCOCK replied that he had purchased the BMW recently. When Officer Chapman asked for HANCOCK's driver's license,

HANCOCK indicated that he did not have one, as it was currently suspended. HANCOCK stated that he had identification in his backpack, which was sitting on the floorboard of the front passenger area. HANCOCK then grabbed the backpack and started to unzip the main compartment. Officer Chapman told HANCOCK not to retrieve his identification and asked for HANCOCK's name and date of birth, which HANCOCK provided.

10. While Officer Chapman performed a SHASCOM Dispatch records check of HANCOCK, HANCOCK again said he could provide his identification and reached for the backpack. HANCOCK again tried to unzip the main compartment of the backpack, before Officer Chapman again told him not to do so.

11. The SHASCOM Dispatch records check indicated that HANCOCK did indeed have a suspended license. Officer Chapman asked HANCOCK to get out of the car, at which time Officer Chapman observed that HANCOCK's knee was bandaged and HANCOCK walked with a pronounced limp. HANCOCK indicated he had been bitten by a pit bull. Officer Chapman had HANCOCK sit in the rear of the patrol car, at which time he reviewed HANCOCK's record, which indicated that HANCOCK's license had been suspended as the result of a DUI charge. Believing HANCOCK to be in violation of California Vehicle Code § 14601.2(a), driving on a license suspended for a DUI conviction, Officer Chapman ordered that the BMW be towed. Before the BMW was towed, Officer Chapman conducted an inventory search.

12. During the inventory search, Officer Chapman found a loaded Sig Sauer, Model P226 handgun, 9mm caliber handgun bearing serial number 47A090362, in a black nylon holster on the floorboard, just under the driver's seat. The handgun was outfitted with what appeared to be a laser sight. A records check indicated the handgun had recently been reported stolen to the Redding Police Department.

13. In the backpack on the passenger side floorboard of the car (the one for which HANCOCK had reached twice), Officer Chapman found in the main compartment a loaded Smith & Wesson Model SW9F, 9mm caliber handgun, bearing serial number PAF2126. A records check using its serial number indicated that HANCOCK was not the handgun's registered owner. Officer Chapman also found in the backpack's main compartment another ammunition magazine for the Sig Sauer handgun containing 9mm rounds, metal knuckles, and what appeared to be a locked metal handgun case.

14. In a separate compartment (different from the compartment that HANCOCK had tried to unzip when saying he could retrieve his identification), Officer Chapman located a wallet containing HANCOCK's identification.

15. Additional Redding Police Department officers who arrived on the scene opened the metal handgun case. Inside it, officers found three plastic baggies of what appeared to be methamphetamine (bundled together with the contents of each appearing to be the same), and three plastic baggies of what appeared to be heroin (also bundled together with their contents appearing to be the same). When weighed later, officers determined the suspected methamphetamine to weigh approximately 79.2 gross grams in its packaging. Officers field tested the contents of one of the baggies and found it to be presumptively positive for methamphetamine. The suspected heroin was also weighed later and found to weigh approximately 14.1 gross grams in its packaging. Officers field tested the contents of one of the baggies and found it to be presumptively positive for heroin. The metal handgun case from the backpack also contained additional Ziploc bags, a digital scale, and miscellaneous pills that were later identified as Xanax pills, Oxycodone pills, and Suboxone sublingual film strips. Officers also found what appeared to be pay/owe sheets in the backpack.

16. Officer Chapman read HANCOCK his Miranda rights, and HANCOCK indicated that he understood them. Officer Chapman then asked HANCOCK if the narcotics were his, and HANCOCK admitted to possessing them.

17. Officer Chapman also found on HANCOCK's person $350 in cash and a room key for a room at the Vagabond Inn. Based on the contraband recovered from HANCOCK's car, Redding Police Officers obtained a search warrant for his hotel room from a Shasta County Superior Court Judge. Inside the room, officers located additional pay/owe sheets, and a duffel bag containing men's clothing and five 30-30 ammunition rounds. Officers also found in a safe an AMT Backup .380 caliber handgun pistol bearing serial number A45102, a plastic bag holding multiple rounds of .22 long rifle ammunition, and a box of .380 caliber ammunition. Officers also found a Blackhawk brand holster, designed to hold Smith & Wesson sigma model handguns (which was the type found in HANCOCK's backpack). Officers also found 27 Suboxone sublingual films on the nightstand, as well as a glass pipe with white residue on it, on the bed.

18. A review of HANCOCK's criminal history revealed that HANCOCK had been convicted of a felony, that is, a crime punishable by a term of imprisonment of more than one year, for violation of California Vehicle Code § 23153(b), driving under the influence of alcohol (0.08 BAC or higher). In my training and experience, I know Sig Sauer and Smith & Wesson handguns to be manufactured outside of California. HANCOCK's possession of the handguns described above, in the State of California, indicates that these particular handguns have moved in and affected interstate commerce.

### IV.   Request for Complaint and Warrant

19. Based on the facts stated above, I believe that probable cause exists to charge Eric HANCOCK by the requested Criminal Complaint with violations of 18 U.S.C. § 922(g)(1) [Felon in Possession], and 21 USC § 841(a)(1) [Possession with Intent to Distribute Methamphetamine].

*Remainder of page intentionally left blank*

and Heroin], and respectfully request that this Court issue a Criminal Complaint and Arrest Warrant.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on this 4th day of September 2018 by:

Mark Giacomantonio, Special Agent
U.S. Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed to before me this 4th day of September, 2018

Hon. Kendall J. Newman
Unites States Magistrate Judge

Approved as to Form:

James R. Conolly
Assistant United States Attorney